OPINION OF THE COURT
David S. Ritter, J.
A significant question has recurred during jury selection in this case which involves the aborted robbery of an armored Brink’s truck and the fatal shooting of three persons, two being uniformed police officers. Defendants contend that all prospective jurors with family members employed in any area of law enforcement should be excused for cause pursuant to CPL 270.20 (subd 1, par [c]). The gravamen of defendants’ contention is that all persons of such status have an “implied bias” that cannot be corrected by an expurgatory oath.[1] The issue is critical because a fairly large number of prospective panelists have some relationship to persons involved in the field of law enforcement.[2] Thus, the narrow legal issue I will now *968 address is whether a mere relationship to a person involved in law enforcement constitutes a sufficient ground for a challenge for cause pursuant to the statute. In my judgment, this status alone is an insufficient basis for disqualification and each panelist in this category must be analyzed individually so that I may determine if the evidence concerning that particular juror supports a finding of “implied bias.”
Although the term “implied bias” has been abandoned in the present statutory scheme, the concept underlying the term has survived. Thus, a challenge for cause may be made on the ground that the juror “is related within the sixth degree by consanguinity or affinity to the defendant, or to the [victim] * * * or to a prospective witness * * * or to counsel * * * or that he is or was a party adverse to any such person in a civil action; or that he has complained againpt or been accused by any such person in a criminal action” (CPL 270.20, subd 1, par [c]). In addition to the enumerated relationships, the statute empowers the Trial Judge to identify other suspect relationships. Thus, a venireman may not serve if “he bears some other relationship to any such person of such nature that it is likely to preclude him from rendering an impartial verdict” (CPL 270.20, subd 1, par [c]; People v Branch, 46 NY2d 645,650).
In the case of the enumerated relationships covered in paragraph (c), “an expurgatory oath is not available to purge the taint of bias implied by the law from the existence of the relationship” (People v Provanzano, 50 NY2d 420, 424). But, as noted by the Presiding Justice of this Department, the question of whether a prospective juror has the kind of suspect relationship described above is not always easy to resolve. (People v Harris, 84 AD2d 63, 94, affd 57 NY2d 335, cert den 460 US 1047.)
People v Harris (supra) and other decisions by the New York Court of Appeals have stressed the great flexibility accorded the Trial Judge, as well as the increased responsi *969 bility imposed by the Criminal Procedure Law with respect to determining which potential jurors should be excused for cause (see, e.g., People v Culhane, 33 NY2d 90). In both Harris and Culhane, the court cited illustrations of some cases where the Trial Judge should disqualify a prospective juror on the basis of a nonenumerated suspect classification. One illustrative case is Sims v United States (405 F2d 1381), involving the murder of a taxicab driver. In Sims, the District of Columbia Circuit Court of Appeals ordered a new trial and noted (p 1384, n 5), that on retrial, jurors who are or are related to taxicab drivers “should be excused”. Defendants argue that the citation of Sims establishes the proposition that New York has adopted a per se rule of disqualification for all prospective jurors who have family members with the same or similar occupational status as the victim of the crime charged (see, e.g., People v Culhane, supra, p 103; People v Harris, supra, p 93; People v Sellers, 73 AD2d 697).
In my view, defendants’ position is untenable and does not reflect the holding of the New York appellate decisions, or the rationale of the Sims case. Indeed, another decision by the District of Columbia Circuit Court of Appeals indicates quite clearly that Sims was never intended to create a per se rule of disqualification on the theory advanced by defendants herein (see United States v Caldwell, 543 F2d 1333). Caldwell involved two armed bank robberies and the murder of a uniformed police officer following a shootout. As in the case at bar, the defendants argued that all police relatives should be disqualified from jury service without further questioning. The court rejected the contention with the following observation {supra, p 1347): “As to the questioned veniremen in the present case, we observe that none was related to a police officer who had been murdered, and no juror who served is shown to have been a victim of or a witness to any offense for which appellants were indicted. We hold that, absent a specific showing of bias, a defendant accused of murdering a police officer is not entitled to a jury free of policemen’s relatives.”
Moreover, the court noted that the law in the District of Columbia Circuit is that “jurors must be excused for cause if their experience or that of their close relatives, is such as *970 to indicate the probability of partiality” (543 F2d, at p 1345, n 47, citing, inter alia, Sims v United States, supra; emphasis supplied).
The Second Circuit Court of Appeals has also expressly rejected the broad reading of Sims (supra) urged by defendants. In Mikus v United States (433 F2d 719, 724), the court stated: “this court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships * * * where, as here, there is no showing of actual bias” (cf. Smith v Phillips, 445 US 209).
I do not reject the proposition that a close relationship with someone connected to law enforcement may create a disqualifying implied bias in some prospective jurors, given the nature of this case, and such individuals should be excused for cause (see People v Johnson, 89 AD2d 506; People v Sellers, supra; but see, contra, People v Jenkins, 91 AD2d 557). However, in my view, ordinarily a prospective panelist need not be disqualified unless he or she is closely related to another person who has been harmed under the same circumstances as the victim involved in the case on trial (see People v Sellers, supra; United States v Caldwell, supra; Jackson v United States, 395 F2d 615). Accordingly, it is necessary to conduct a detailéd inquiry to determine whether there is a factual predicate establishing the existence of an implied bias.
Since 16 panelists have been challenged by the defendants because they have police relatives, I will rule on those challenges individually after affording counsel the opportunity to call to my attention evidence which it is claimed will warrant a finding of “implied bias” as to each panelist challenged.

. Where there is some evidence of actual bias, a prospective juror may not be seated unless he states unequivocally “ ‘that his prior state of mind concerning either the case or * * * the parties will not influence his verdict, and *** that he will render an impartial verdict based solely on the evidence’ ” (see People v Blyden, 55 NY2d 73, 78).

. The broad nature of defendants’ contention is best illustrated by examples of persons who have been challenged on this same basis, i.e., relatives of persons working for the District Attorney’s office of a different county, relatives of uniformed fire fighters, friends of law enforcement personnel. Moreover, since the “victims” in this criminal action include the Brink’s Company and several banks, defendants contend that panelists related to persons involved in the armored truck business or banking industry must also be automatically disqualified. The challenges under consideration herein do not *968 involve veniremen who are themselves personally involved in law enforcement, or who are related in any degree to any person involved in the matter before this court. Finally, it should be noted that defense counsel attempted to withdraw their challenges to several panelists who have “police relatives” after I excused them on consent of the prosecution. Given this tactic, I find it even more difficult to accept their contention that any purported “implied bias” will affect the impartiality of these prospective jurors.